**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LISA PINELLI,
                       Plaintiff,
                       v.
                       Civil No.:  5:25-cv-05599-JMG

HEALTH NETWORK LABORATORIES, LLC,
                       Defendant.

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                         **May 20, 2026**

## I.    OVERVIEW

Plaintiff Lisa Pinelli brings this action against Defendant Health Network Laboratories, LLC, doing business as HNL Lab Medicine, for violating the Americans with Disabilities Act, as amended ("ADA"), the Family Medical Leave Act ("FMLA"), and Pennsylvania Human Relations Act ("PHRA"). Defendant moves to dismiss all Plaintiff's claims. For the reasons set forth below, Defendant's motion is **GRANTED in part**.

## II.    BACKGROUND[1]

Plaintiff began working for Defendant as a Phlebotomy Supervisor on January 4, 2021. *See* Compl. ¶ 14 (ECF No. 1). She suffers from anxiety, hypertension, back and jaw conditions, and substance abuse dependency. *See id.* ¶ 16. Although Plaintiff could perform the essential functions of her job, these conditions nonetheless substantially limit her ability to work. *See id.* ¶¶ 17-18. At times, Plaintiff needed "block" or intermittent medical leave. *See id.* ¶ 18. She took several months off in early 2022 for mandibular surgery, and she took medical leave covered by the FMLA around

---

[1] The Court accepts Plaintiff's factual allegations as true, as we must at this early stage.

January 2023 for lumbar surgery. *See id.* ¶ 20. Plaintiff also took intermittent time off for doctor's appointments to treat her disabilities. *See id.* ¶ 21.

Between January 4, 2021, and December 2023, Plaintiff's supervisor, William Miranda, "exhibited clear frustration" with her disabilities and accommodations. *See id.* ¶ 23. Miranda "treated her in a rude and demeaning way, regularly talking down to her and making her feel stupid." *See id.* ¶ 23. When she returned from FMLA leave in spring or summer of 2023, "Miranda subjected Plaintiff to increased levels of hostility and animosity, made derogatory comments to her on a daily basis, and made her feel that she could not perform her job well, which was completely untrue." *See id.* ¶ 24. Even though several of Plaintiff's managers praised her work, "Miranda gave Plaintiff a less than favorable review for 2023," claiming "he could not rate her for the entire year" because Plaintiff had been out on medical leave. *See id.* ¶¶ 25-26. This "hostile work environment" exasperated Plaintiff's anxiety and "caused her to begin to drink at night." *See id.* ¶ 27. Plaintiff complained to Defendant's human resources department about Miranda for months. *See id.* ¶ 28.

On December 6, 2023, Defendant terminated Miranda and replaced him with Kristine Evans. *See id.* ¶¶ 29-30. Several weeks after Evans assumed this supervisory position, Evans placed Plaintiff on a "30/60/90" plan to evaluate Plaintiff's job functions, but she did not raise specific concerns with Plaintiff's performance. *See id.* ¶ 31.

On February 26, 2024, Plaintiff entered a 30-day inpatient rehabilitation program because she thought her alcohol consumption was becoming a problem. *See id.* ¶ 32. After she returned to work on April 3, 2024, she was "almost immediately subjected to increased levels of hostility and scrutiny of her work." *See id.* ¶ 33. Evans constantly asks Plaintiff if she performed her job duties, despite Plaintiff staying on top of them. *See id.* ¶ 33. Meanwhile, nondisabled employees were

often behind on logs and schedules, but Evans did not "chastise" them for this conduct. *See id.* ¶ 34.

Due to this "hostile work environment" and Plaintiff dealing with her daughter's serious health conditions—which she disclosed to Defendant and Evans—Plaintiff relapsed. *See id.* ¶ 36. Plaintiff took another medical leave of absence from May 17, 2024, to July 2, 2024. *See id.* ¶ 36. Her daughter was also hospitalized during this time and almost died from a severe infection. *See id.* ¶ 37.

Plaintiff returned from this medical leave on July 2, 2024. *See id.* ¶ 38. Upon her return, Defendant had Plaintiff schedule coverage for 68 nursing homes while Defendant was "chronically understaffed." *See id.* ¶ 43. Defendant also required Plaintiff to work in Defendant's nursing homes to train new hires, unlike similarly situated managers. *See id.* ¶ 43. Even though Plaintiff fulfilled her job duties, on August 7, 2024, Evans placed Plaintiff on a thirty-day performance improvement plan ("PIP") without warning. *See id.* ¶ 39. Meanwhile, similarly situated nondisabled supervisors were not reprimanded or placed on performance plans when they failed to provide schedules for one month out, as required, and stay current with ride-along audits. *See id.* ¶ 44. But before the end of the thirty-day PIP, Evans terminated Plaintiff on August 23, 2024, citing false performance concerns. *See id.* ¶ 41.

Plaintiff filed this lawsuit after exhausting her administrative remedies. *See id.* ¶¶ 7-8. She brings several claims against Defendant, alleging that it violated the ADA, FMLA, and PHRA. Defendant moves to dismiss Plaintiff's Complaint in its entirety. *See generally* Def.'s Br. in Supp. of its Mot. to Dismiss Pl.'s Compl. ("Def.'s Br. in Supp.") (ECF No. 10-1).

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

### IV.    ANALYSIS

Defendant seeks to strike "time-barred" allegations and dismiss all of Plaintiff's claims under the ADA, FMLA, and PHRA. Because the standard is the same for Plaintiff's ADA and PHRA claims, the Court will assess Plaintiff's PHRA claims with her ADA claims. *See Brown v. Aria Health*, No. CV 17-1827, 2019 WL 1745653, at *5 (E.D. Pa. Apr. 17, 2019) ("Courts use the same standard to address PHRA claims as they do ADA claims." (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999))); *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019) ("ADA and PHRA claims involve same elements[.]" (citing *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 n.6 (3d Cir. 2004))).

4

### a. Defendant's Request to Strike Time-Barred Allegations

In its Rule 12(b)(6) Motion to Dismiss, Defendant asks the Court to "strike" allegations pertaining to Miranda's conduct because it is time-barred. *See* Def.'s Br. in Supp., at 8; Def.'s Reply Br. in Supp. of its Mot. to Dismiss Pl.'s Compl. ("Def.'s Reply"), at 3 (ECF No. 14). Though this is not a proper motion to strike under Rule 12(f), Rule 12(f) allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from the pleading. *See* FED. R. CIV. P. 12(f). These motions are generally disfavored. *See Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994, at *11 (E.D. Pa. July 26, 2023) (citing *Kaetz v. Wolfson*, 2022 WL 4115505, at *1 n.2 (3d Cir. Sept. 9, 2022)). "[O]nly allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken." *Id.* (citation omitted). That cannot be said for Plaintiff's allegations.

In exercising its "considerable discretion," the Court **DENIES** Defendant's improperly raised motion to strike. *See Amres Corp. v. Nextres LLC*, No. CV 24-824, 2025 WL 77068, at *2 (E.D. Pa. Jan. 9, 2025), *aff'd,* No. 25-1197, 2026 WL 446505 (3d Cir. Feb. 17, 2026). Nonetheless, when assessing the Motion to Dismiss, the Court will exclude conduct occurring before January 9, 2024 based on Plaintiff's representation that she is not pursuing adverse actions occurring before this time.[2] *See* Pl.'s Br. in Opp'n to Def.'s Mot to Dismiss ("Pl.'s Opp'n Br."), at 7 (ECF No. 11).

### b. ADA/PHRA Claims

#### 1. ADA/PHRA Disability Discrimination

Under the ADA, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge

---

[2] Plaintiff does advise that this conduct is relevant for her hostile work environment claim. *See* Pl.'s Opp'n Br., at 7-8. The Court will address that below. *See infra* at 7.

of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 314 (E.D. Pa. 2020) (citation modified) (quoting 42 U.S.C. § 12112(a)). To state a plausible discrimination claim, Plaintiff must allege that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) she suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted). She can establish causation "through the unusually suggestive temporal proximity of the adverse action to the protected activity, a pattern of antagonism coupled with timing or other facts supporting an inference of causation." *Ragsdale v. Univ. of Pa. Health Sys.*, 613 F. Supp. 3d 888, 895 (E.D. Pa. 2020) (citation modified) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Defendant argues that Plaintiff did not sufficiently allege that her termination was the result of disability discrimination. *See* Def.'s Br. in Supp., at 13. But in making its arguments, Defendant relies entirely on summary judgment cases. *See* Def.'s Br. in Supp., at 13-14. Moreover, Plaintiff "need not establish a *prima facie* case of discrimination" at the pleading stage. *See Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). Her Complaint is sufficient if it "pleads how, when, and where" Defendant allegedly discriminated against her, "such that an employer is on notice of the basis of the claim against it." *See id.* (citing *Fowler*, 578 F.3d at 212). And it does.

Plaintiff satisfies these requirements. She pleaded that Evans treated her differently than her nondisabled colleagues. Evans placed Plaintiff on plans addressing her performance despite Plaintiff performing her job well. *See* Compl. ¶¶ 31, 33, 39. Yet her colleagues failed to fulfill their job obligations and were not reprimanded for it. *See id.* ¶¶ 34, 44. And after Plaintiff's last medical

leave, she was quickly placed on a PIP and fired before the end of the PIP. *See id.* ¶¶ 39, 41. This is enough to show "how, when, and where" Defendant discriminated against her and to place it on notice of her discrimination claim. Defendant's motion to dismiss Plaintiff's ADA/PHRA disability discrimination claims is **DENIED**.

## 2. ADA/PHRA Hostile Work Environment

To state an ADA hostile work environment claim, Plaintiff must allege that: (1) she "is a qualified individual with a disability under the ADA;" (2) she "was subject to unwelcome harassment;" (3) Defendant "harassed [her] because of [her] disability or because of a request for an accommodation;" (4) "the harassment was sufficiently severe or pervasive to alter the conditions of [P]laintiff's employment and to cause an abusive working environment;" and (5) Defendant "knew or should have known of the harassment and failed to take prompt effective remedial action." *Kalasheh v. Verdantas LLC*, No. 2:25-CV-05103-JDW, 2026 WL 753935, at *4 (E.D. Pa. Mar. 17, 2026) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)).

Determining whether harassment is sufficiently "severe or pervasive" requires the Court to consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCloud v. Reading Sch. Dist.*, No. 5:25-CV-02119, 2025 WL 2845377, at *6 (E.D. Pa. Oct. 7, 2025) (quoting *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 440 (E.D. Pa. 2023)). "Workplace conduct must be viewed in its entirety, but isolated incidents do not amount to discriminatory changes in the conditions of employment." *Id.* (citing *Douglas v. Kensington Cmty. Corp. for Individual Dignity*, 775 F. Supp. 3d 881, 898 (E.D. Pa. 2025)). The work environment must also be objectively hostile. *Id.* (citing *Walton*, 168 F.3d at 667).

7

Defendant argues that subjecting an employee to "increased scrutiny" by asking whether the employee fulfilled her job duties does not give rise to a hostile work environment claim. *See* Def.'s Br. in Supp., at 10-11. Defendant also claims that Plaintiff's allegations are conclusory and time-barred. *See id.* at 11. Plaintiff argues dismissal would be premature, and the continuing violation theory accounts for continuing non-discrete acts even if they fall outside the statute of limitations.[3] *See* Pl.'s Opp'n Br., 8, 13-14. In its reply, Defendant points out that the conduct must be from the same individual for the continuing violation theory to apply. *See* Def.'s Reply, at 2.

The Court declines to grant Defendant's Motion to Dismiss as to Plaintiff's hostile work environment claim. Even if the Court excluded Miranda's conduct,[4] all the circumstances here show that Plaintiff's allegations survive Defendant's Motion to Dismiss. Evans constantly asked Plaintiff whether she fulfilled her job duties, which Plaintiff did, but Evans did not reprimand nondisabled employees, who often fell behind. *See* Compl. ¶¶ 33-34, 43-44. Evans specifically targeting Plaintiff suggests more than just "ordinary tribulations indicating friction between a supervisor and an employee." *See Stucke v. City of Phila.*, 685 F. App'x 150, 154 (3d Cir. 2017)

---

[3] The continuing violation doctrine allows "discriminatory acts that are not individually actionable" to "be aggregated to make out a hostile work environment claim." *Gross v. Hatboro-Horsham Sch. Dist.*, No. CV 23-0633, 2023 WL 4867423, at \*6 (E.D. Pa. July 31, 2023) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013)). These acts may "occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *Id.* (quoting *Mandel*, 706 F.3d at 165). To fall within this equitable exception to the timely filing requirements, Plaintiff "must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* (quoting *Mandel*, 706 F.3d at 165-66).

[4] Because the hostile work environment claim survives Defendant's motion, the Court declines to decide at this juncture whether the continuing violation doctrine bars the Court from considering Miranda's conduct. The parties can revisit this issue at summary judgment if necessary.

(citation modified). Defendant's motion to dismiss Plaintiff's ADA/PHRA hostile work environment claims is **DENIED**.

### 3. ADA/PHRA Retaliation

The ADA prohibits employers from "retaliat[ing] against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *See Dreibelbis*, 438 F. Supp. 3d at 318-19 (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003)). To state a retaliation claim, Plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal: (1) Plaintiff engaged in a protected employment activity under the ADA; (2) Defendant took adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Connelly*, 809 F.3d at 789. Plaintiff can establish causation by showing: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action"; "(2) a pattern of antagonism coupled with timing to establish a causal link"; or (3) the factfinder should infer causation "from the evidence gleaned from the entire record as a whole." *Tyler v. Penske Truck Leasing Co., L.P.*, No. CV 24-5369, 2025 WL 1462555, at *7 (E.D. Pa. May 21, 2025) (citations omitted).

Defendant argues that Plaintiff did not allege facts showing a pattern of antagonism or a causal connection between her reasonable accommodation, *i.e.*, leave of absence, and her performance improvement plan. *See* Def.'s Br. at 14. Specifically, Defendant maintains that placing Plaintiff on a performance improvement plan five weeks after returning from a leave of absence is not unusually suggestive temporal proximity. *See* Def.'s Br. at 15. But once again, Defendant relies exclusively on motion for summary judgment cases in making its arguments.

The Court disagrees with Defendant. Plaintiff's allegations, as a whole, demonstrate that she has adequately pled an ADA/PHRA retaliation claim. Shortly after she returned from disability

leave in July 2024, she was placed on a PIP, even though Plaintiff performed her job well.[5] *See* Compl. ¶¶ 31, 33, 39. Plaintiff did not even get to complete the PIP, as Evans terminated her employment two weeks later. *See id.* ¶¶ 39, 41. Collectively, these allegations are enough to state a retaliation claim. Defendant's motion to dismiss Plaintiff's ADA/PHRA retaliation claims is **DENIED**.

### 4. ADA/PHRA Failure to Accommodate

Discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor*, 184 F.3d at 306. Defendant violates the ADA if it does not make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless" Defendant "demonstrate[s] that the accommodation would impose an undue hardship on" its business operation. *Dreibelbis*, 438 F. Supp. 3d at 315-16 (quoting 42 U.S.C. § 12112(b)(5)(A)). To state a claim for failure to accommodate, Plaintiff must "assert[] facts that raise a reasonable inference that:" (1) Plaintiff was disabled and Defendant knew it; (2) Plaintiff requested an accommodation or assistance; (3) Defendant "did not make a good faith effort to assist;" and (4) Plaintiff "could have been reasonably accommodated." *Kalasheh*, 2026 WL 753935, at *5 (citation modified) (quoting *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017)).

Defendant argues that Plaintiff did not allege facts showing it did not make a good faith effort to assist Plaintiff with her request for accommodation. *See* Def.'s Br. in Supp., at 12.

---

[5] Plaintiff alleges that she had not been counseled or warned of performance concerns before being placed on a PIP. *See* Compl. ¶ 40. That is simply inaccurate, considering Plaintiff alleges she complained about being repeatedly asked whether she had performed her job duties. *See, e.g.*, *id.* ¶ 33.

Defendant points to Plaintiff's various medical leaves, which Defendant granted. *See* Def.'s Br. in Supp., at 12. Plaintiff reports that she will withdraw her ADA and PHRA claims for failure to accommodate. *See* Pl.'s Opp'n Br. at 2 n.1-2. Accordingly, Defendant's motion to dismiss Plaintiff ADA/PHRA failure to accommodate claims is **GRANTED without prejudice**.

### 5.    ADA/PHRA Associational Disability Discrimination

To prove associational disability discrimination, Plaintiff must show that: "(1) she was 'qualified' for her job at the time of the adverse employment action; (2) she was subjected to adverse employment action;" (3) Defendant knew at the time that she had a relative or associate with a disability; and "(4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Douglas*, 775 F. Supp. 3d at 901 (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997)).

Defendant argues that Plaintiff failed to plead facts showing that her daughter's alleged disability played any role at all in her termination, let alone was a determining factor. *See* Def.'s Br. in Supp., at 16. Defendant also contends that Plaintiff did not plead any facts about her daughter, aside from pleading that: (1) Plaintiff was dealing with her daughter's health serious conditions while already on medical leave; (2) Plaintiff disclosed it to Defendant; (3) her daughter was hospitalized; (4) and her daughter almost died from an infection. *See* Def.'s Br. in Supp., at 16.

Dismissing at this juncture would be premature. Plaintiff has pled enough facts to show that her daughter's severe illness could be a determining factor in her termination. Specifically, Plaintiff was quickly placed on a PIP and terminated before the end of the PIP after Plaintiff returned from her last medical leave, which involved her daughter's illness in addition to Plaintiff's own disability. *See* Compl. ¶¶ 39, 41. Contrast that with her previous medical leaves when her

11

leave had nothing to do with her daughter. Defendant's motion to dismiss Plaintiff's ADA/PHRA associational disability discrimination claims is **DENIED**.

### c. FMLA Claims

#### 1. FMLA Interference

Under the FMLA, an employer may not "interfere with, restrain, or deny" an employee from exercising her FMLA rights. *See* 29 U.S.C. § 2615(a)(1). Accordingly, Defendant violates the FMLA if it "refuses to grant FMLA leave or discourages the employee from taking leave." *Leon v. Bensalem Twp. Sch. Dist.*, No. CV 23-01374, 2024 WL 3744352, at *7 (E.D. Pa. Aug. 9, 2024) (citing *Clark v. Phila. Hous. Auth.*, 701 F. App'x 113, 117 (3d Cir. 2017)).

To prove FMLA interference, Plaintiff must show that: (1) "she was an eligible employee under the FMLA;" (2) "[D]efendant was an employer subject to the FMLA's requirements;" (3) "[P]laintiff was entitled to FMLA leave;" (4) Plaintiff notified Defendant of her intention to take FMLA leave; and (5) Plaintiff was denied benefits that she was entitled to under the FMLA. *Id.* at *6-7 (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)).

Defendant argues that Plaintiff failed to state a claim for FMLA interference because she alleges she took medical leave several times and returned to work after each leave of absence. *See* Def.'s Br. in Supp., at 17. In other words, she was permitted to take FMLA leave. Plaintiff does not dispute that she took leave. Rather, she contends that an employee can still "bring an interference claim based upon a failure to reinstate if the employer cites only factors predating the employee's return to work to justify the adverse action." *See* Pl.'s Opp'n Br., at 18. *Whitman v. Proconex, Inc.*, No. CIV.A.08-2667, 2009 WL 141847, at *7 (E.D. Pa. Jan. 20, 2009) (citation modified) (quoting *Campbell v. Gambro Healthcare, Inc.,* 478 F.3d 1282, 1287 (10th Cir.2007)).

Plaintiff's argument fails for several reasons. *Whitman* is not persuasive because the employer there terminated the plaintiff's employment within ten minutes of her reporting to work

12

after taking medical leave. *See Whitman*, 2009 WL 141847, at *5. In contrast, Defendant did not terminate Plaintiff's employment until 52 days after she returned from leave. *See* Compl. ¶¶ 38, 41. And even if *Whitman* were persuasive, Plaintiff did not plead that Defendant relied on pre-leave conduct as a basis of terminating her employment. Nor did Plaintiff plead facts showing that Defendant interfered with her FMLA rights.

Plaintiff failed to show that Defendant "refuse[d] to grant FMLA leave or discourage[d]" her from taking medical leave. *Leon*, 2024 WL 3744352, at *7 (citing *Clark*, 701 F. App'x at 117). To the contrary, Plaintiff did use FMLA-qualifying leave. *See* Compl. ¶¶ 36, 64. Because leave to amend would be futile, Defendant's motion to dismiss Plaintiff's FMLA interference claim is **GRANTED with prejudice**.

### 2. FMLA Retaliation

To prevail on her FMLA retaliation claim, Plaintiff must prove that she: (1) invoked her right to FMLA leave; (2) she "suffered an adverse employment decision"; and (3) "the adverse action was causally related to [her] invocation of rights." *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 674-75 (E.D. Pa. 2021) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-302 (3d Cir. 2012)). To plead causation, Plaintiff can rely on an "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or "a pattern of antagonism coupled with timing." *Leon*, 2024 WL 3744352, at *7 (quoting *Clark*, 701 F. App'x at 116).

Defendant argues that Plaintiff cannot satisfy either "unusually suggestive temporal proximity" or a "pattern of antagonism coupled with timing." *See* Def.'s Br. in Supp., at 18. But Defendant ***again*** cites all summary judgment cases to support its temporal proximity argument, and no cases at all for its pattern of antagonism argument.

The Court finds that Plaintiff has stated a claim for FMLA retaliation. Plaintiff alleges Defendant retaliated against her for using FMLA leave by threatening to discipline or terminate her after returning from medical leave, terminating Plaintiff before she could use additional medical leave, and terminating her in retaliation for using medical leave. *See* Compl. ¶ 64. Moreover, Plaintiff pled that she was placed on an unfounded 30-day PIP about one month after her return was terminated before the end of the PIP. *See id.* ¶¶ 39-41. And Plaintiff alleged that Defendant selectively enforced its policies against her, while Defendant did not reprimand similarly situated but nondisabled supervisors who failed to fulfill their job duties. *See id.* ¶¶ 43-45. This is enough to proceed to discovery. Defendant's motion to dismiss Plaintiff's FMLA retaliation claim is **DENIED**.

## V.       CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 10) is **GRANTED in part**. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

14